IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| DARWYN HANNA, MARIE HANNA; HELEN DAILEY; GLORIA MEDINA; CHARLES KEATHLEY; MARY ELLEN KEATHLEY; DUANE MCKERVEY; KIM MCKERVEY; EVELYN VIOT; VELMA LUTTRELL; KAREN WEBB; DEBRA KING; DOROTHY MILBERGER; BETTY KAHANEK; MOLLIE DUBOIS; JANICE GASKAMP, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX OF THE ESTATE OF EUGENE GASKAMP, DECEASED; TIM ORR; CHRISTINE SHEETS; CHARLES SHEETS; LESLEY SCHELL, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF DEBORAH ORR, DECEASED; MARY LUCAS; MARY HALL; LINDA COX; JOSEPH RABEL; BETTY RABEL; LOUISA CRUZ; JUANITA CRUZ; PRISCILLA TORRES; JUSTINE NYGREN; JILL MCCAN; SANTIAGO DELACRUZ; MARY DELACRUZ; RODNEY TURNER AND CATHERINE TURNER <br><br> VS. <br><br> CSX TRANSPORTATION, INC. and CSX CORPORATION | C.A. NO. 1:19-cv-124-LG-RHW <br><br> JURY TRIAL DEMANDED |

**PLAINTIFFS' ORIGINAL COMPLAINT**

**COMES NOW**, Plaintiffs, Darwyn Hanna; Marie Hanna; Helen Dailey; Gloria Medina; Charles Keathley; Mary Ellen Keathley; Duane McKervey; Kim McKervey; Evelyn Viot; Velma Luttrell; Karen Webb; Debra King; Betty Kahanek; Dorothy Milberger; Mollie Dubois; Janice Gaskamp, Individually and as Independent Executrix of the Estate of Eugene Gaskamp, and on

behalf of all those Entitled to Recover for the Death of Eugene Gaskamp, Deceased, Under the Mississippi Wrongful Death/Survival Act; Tim Orr; Christine Sheets; Charles Sheets; Lesley Schell, Individually and on behalf of the Estate of Deborah Orr and on behalf of all those Entitled to Recover for the Death of Deborah Orr, Under the Mississippi Wrongful Death/Survival Act; Mary Lucas; Mary Hall; Linda Cox; Joseph Rabel; Betty Rabel; Louisa Cruz; Juanita Cruz; Priscilla Torres; Justine Nygren; Jill McCan; Santiago Delacruz; Mary Delacruz; Rodney Turner and Catherine Turner (collectively referred to as "Plaintiffs"), and files this their Original Complaint, complaining of CSX Transportation, Inc. (hereinafter referred to as "CSXT"), and as grounds thereof, would show as follows:

## **Plaintiffs**

1. Plaintiff, Darwyn Hanna, is a resident of Bastrop County, Texas.

2. Plaintiff, Marie Hanna, is a resident of Bastrop County, Texas.

3. Plaintiff, Helen Dailey, is a resident of Williamson County, Texas.

4. Plaintiff, Gloria Medina, is a resident of Harris County, Texas.

5. Plaintiff, Charles Keathley, is a resident of Bastrop County, Texas.

6. Plaintiff, Mary Ellen Keathley, is a resident of Bastrop County, Texas.

7. Plaintiff, Duane McKervey, is a resident of Williamson County, Texas.

8. Plaintiff, Kim McKervey, is a resident of Williamson County, Texas.

9. Plaintiff, Evelyn Viot, is a resident of Bastrop County, Texas.

10. Plaintiff, Velma Luttrell, is a resident of Bastrop County, Texas.

11. Plaintiff, Karen Webb, is a resident of Montgomery County, Texas.

12. Plaintiff, Debra King, is a resident of Bastrop County, Texas.

13. Plaintiff, Betty Kahanek, is a resident of Bastrop County, Texas.

14. Plaintiff, Dorothy Milberger, is a resident of Bastrop County, Texas.

15. Plaintiff, Mollie Dubois, is a resident of Bastrop County, Texas.

16. Plaintiff, Janice Gaskamp, Individually, and as Independent Executrix of the Estate of Eugene Gaskamp, Deceased, and on behalf of all those Entitled to Recover for the Death of Eugene Gaskamp, Deceased, Under the Mississippi Wrongful Death/Survival Act, is a resident of Austin County, Texas.

17. Plaintiff, Tim Orr, is the spouse of Deborah Orr, and is a resident of Bastrop County, Texas.

18. Plaintiff, Christine Sheets, is the daughter of Deborah Orr, and is a resident of California.

19. Plaintiff, Charles Sheets, is the son of Deborah Orr, and is a resident of California.

20. Plaintiff, Lesley Schell (Daughter of Deborah Orr), Individually and on behalf of the Estate of Deborah Orr and on behalf of all those Entitled to Recover for the Death of Deborah Orr, Under the Mississippi Wrongful Death/Survival Act, is a resident of Texas.

21. Plaintiff, Mary Lucas, is a resident of Bastrop County, Texas.

22. Plaintiff, Mary Hall, is a resident of Bastrop County, Texas.

23. Plaintiff, Linda Cox, is a resident of Bastrop County, Texas.

24. Plaintiff, Joseph Rabel, is a resident of Bastrop County, Texas.

25. Plaintiff, Betty Rabel, is a resident of Bastrop County, Texas.

26. Plaintiff, Louisa Cruz, is a resident of Caldwell County, Texas.

27. Plaintiff, Juanita Cruz, is a resident of Caldwell County, Texas.

28. Plaintiff, Priscilla Torres, is a resident of Caldwell County, Texas.

29. Plaintiff, Justine Nygren, is a resident of Travis County, Texas

30. Plaintiff, Jill McCan, is a resident of Caldwell County, Texas.

31. Plaintiff, Santiago Delacruz, is a resident of Caldwell County, Texas.

32. Plaintiff, Mary Delacruz, is a resident of Caldwell County, Texas.

33. Plaintiff, Rodney Turner, is a resident of Bastrop County, Texas.

34. Plaintiff, Catherine Turner, is a resident of Bastrop County, Texas.

## Defendants

35. Defendant, CSX Transportation, Inc., (hereinafter referred to as "CSXT"), is a foreign corporation authorized to do business in the State of Mississippi.  Defendant CSXT may be served with process by serving its registered agent, C.T. Corporation, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi, 39232.  CSXT owns railroad tracks and conducts business in Mississippi by dispatching trains into and through Mississippi.  The train and railroad-highway crossing where the subject collision occurred is owned by CSXT.

36. Defendant, CSX Corporation (hereinafter referred to as "CSXC"), is a foreign corporation authorized to do business in the State of Mississippi.  Defendant CSXC can be served with process through its registered agent: C.T. Corporation System, 4701 Cox Rd., Suite 285, Glen Allen, Virginia 23060.

37. CSX Corporation and CSX Transportation, Inc. (hereinafter collectively referred to as "CSX" or "Defendant Railroad"), by and through their railroad interests, own railroad tracks and conducts business in Harrison County, Mississippi by dispatching trains into and through

Harrison County, Mississippi. The train and railroad-highway grade crossing where the collision that is subject to this litigation occurred is owned by CSX.

38. At all times pertinent hereto, all employees of CSX were acting in their individual capacity and also as agents of CSX, within the scope of their employment and authority, and in the furtherance of the business of CSX. All the acts and omissions of the employees of CSX are imputed to their employer, who is liable for such acts and omissions, as well as rendering the individual Defendants liable in their individual capacities.

## Jurisdiction and Venue

39. This Court has subject matter jurisdiction over this case because the parties are diverse. All Plaintiffs are residents of Texas. CSXC and CSXT are Virginia corporations with their principal places of business in Florida.

40. The Court has subject matter jurisdiction over the controversy because the damages are within the jurisdictional limits of the court and more than $75,000.

41. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in Biloxi, Harrison County, Mississippi – *i.e.*, the bus/train collision at the center of this lawsuit took place in Biloxi, Harrison County, Mississippi.

42. Importantly, all allegations against CSX herein are based upon state tort causes of action seeking damages under state law for personal injury, wrongful death and survival that are purely rail-safety related claims preserved under 49 U.S.C. 20106.

**Facts**

43. On March 7, 2017, a CSX train traveling on a CSX track violently struck a casino tour bus that was stuck on a railroad crossing owned and maintained by CSX.

44. Plaintiffs, or their spouse/parent, were passengers on the bus.

45. This tragic collision occurred at a railroad crossing on Main Street in Biloxi, Mississippi.

46. The subject crossing was the responsibility of CSX and Plaintiffs allege the crossing was an extra hazardous crossing.

47. The tour bus originated from Austin, Texas and from Bastrop, Texas. The tour bus was carrying approximately 50 passengers, largely members of the Bastrop Seniors Center.

48. On day three of the trip, while traveling from one casino to another casino in Biloxi, the tour bus attempted to travel across a railroad crossing located on Main Street.

49. However, the tour bus got stuck on the crossing (Dot No. 340185W also known as Main Street Crossing), where it was struck by the CSX train.

50. The Main Street Crossing is a dangerous and severely inclined or "humped" crossing. The Main Street Crossing consists of several layers of asphalt patches. These asphalt patches create a steep inclined or hump on the north side of the crossing. This hump has been created and gradually grown overtime by automated CSX railroad maintenance practices. The NTSB found that the failure to maintain this track was the primary reason for this tragic accident.

51. Prior to March 7, 2017, there had been at least sixteen accidents at this same crossing. Several of those prior accidents have involved motorists either stuck or stopped on the

Main Street Crossing.  In an accident just months before this accident, a CSX train hit a Pepsi truck that became stuck on the Main Street Crossing.

52. As the casino tour bus in this case began to travel across the crossing, it became high-centered and stuck on the Main Street Crossing.

53. Within a short period of time, a CSX train, traveling in an eastbound direction, struck the tour bus.

54. The CSX train crew failed to apply the brakes in order to avoid the collision.

55. Moreover, CSX failed to properly grade and maintain the crossing, as a Pepsi truck got stuck on this same crossing on January 5, 2017, two months earlier, and likewise was struck by a CSX train.

56. The collision with the tour bus resulted in serious and catastrophic injuries, to Plaintiffs Darwyn Hanna; Marie Hanna; Helen Dailey; Gloria Medina; Charles Keathley; Mary Ellen Keathley; Duane McKervey; Kim McKervey; Evelyn Viot; Velma Luttrell; Karen Webb; Debra King; Dorothy Milberger; Betty Kahanek; Mollie Dubois; Janice Gaskamp; Eugene Gaskamp; Tim Orr;  Christine Sheets; Charles Sheets; Lesley Schell; Mary Lucas; Mary Hall; Linda Cox; Joseph Rabel; Betty Rabel; Louisa Cruz; Juanita Cruz; Priscilla Torres; Justine Nygren; Jill McCan; Santiago Delacruz; Mary Delacruz; Rodney Turner and Catherine Turner, as well as the deaths of Eugene Gaskamp, and Deborah Orr, as well as serious injuries and/or death to the other passengers on the tour bus.

**Personal Injury Claims**

57. Personal Injury Claims are being brought on behalf of Darwyn Hanna; Marie Hanna; Helen Dailey; Gloria Medina; Charles Keathley; Mary Ellen Keathley; Duane McKervey;

Kim McKervey; Evelyn Viot; Velma Luttrell; Karen Webb; Debra King; Betty Kahanek; Dorothy Milberger; Mollie Dubois; Janice Gaskamp; Eugene Gaskamp; Tim Orr; Mary Lucas; Mary Hall; Linda Cox; Joseph Rabel; Betty Rabel; Louisa Cruz; Juanita Cruz; Priscilla Torres; Justine Nygren; Jill McCan; Santiago Delacruz; Mary Delacruz; Rodney Turner and Catherine Turner (hereinafter collectively referred to as "Personal Injury Plaintiffs").

### Wrongful Death Claims

58. Wrongful Death claims (MS Code §11-7-13 et seq., Title II – Civil Practice & Procedures, Chapter 7 (2013)) are being brought by Janice Gaskamp, for the wrongful death of her spouse, Eugene Gaskamp; and by Tim Orr, for the wrongful death of his spouse, Deborah Orr; Christine Sheets, Charles Sheets and Leslie Schell, for the wrongful death of their mother, Deborah Orr (hereinafter collectively referred to as "Wrongful Death Plaintiffs").

### Survival Claims

59. Survival Claims (MS Code §91-7-233 et seq., Title II – Civil Practice & Procedures, Chapter 7 (2013)) are being brought on behalf of the Estate of Eugene Gaskamp; and the Estate of Deborah Orr (hereinafter collectively referred to as "Survival Plaintiffs").

### Loss of Consortium Claims

60. Loss of Consortium Claims are being brought on behalf of Darwyn Hanna; Marie Hanna; Charles Keathley; Mary Ellen Keathley; Duane McKervey; Kim McKervey; Velma Luttrell, Janice Gaskamp; Eugene Gaskamp; Tim Orr; Christine Sheets; Charles Sheets; Lesley Schell; Joseph Rabel; Betty Rabel; Santiago De La Cruz; Mary De La Cruz; Rodney Turner and Catherine Turner (hereinafter collectively referred to as "Consortium Plaintiffs").

**Bystander Claims**

61. Bystander Claims Loss of Consortium Claims are being brought on behalf of Darwyn Hanna; Marie Hanna; Charles Keathley; Mary Ellen Keathley; Duane McKervey; Kim McKervey; Velma Luttrell, Janice Gaskamp; Eugene Gaskamp; Tim Orr; Joseph Rabel; Betty Rabel; Santiago De La Cruz; Mary De La Cruz; Rodney Turner and Catherine Turner (hereinafter collectively referred to as "Bystander Plaintiffs").

**COUNT ONE – Negligence and Gross Negligence of Defendant CSX**

62. The accident made the basis of this case was caused by the negligence and gross negligence of CSX as follows:

   a. Failing to keep a proper lookout;

   b. Failing to slow and/or stop the train in order to avoid a specific individual hazard;

   c. Failing to properly train its employees to keep appropriate lookout;

   d. Failing to have proper posting of emergency telephone numbers and the proper crossing number to report problems on the tracks in order to prevent a collision;

   e. Failing to properly inspect the track and take reasonable precautions to prevent individuals from placing themselves in harm's way due to the steep grade at the crossing;

   f. Failing to operate said train at a reasonable rate of speed given the circumstances prior to and until the accident;

   g. Failing to get off the throttle and apply its brakes in a timely manner;

   h. Failing to get off the throttle and properly apply the brakes in a timely manner in order to avoid the collision;

   i. Failing to perform any studies, inspection or analysis into the past problems at the crossing, most recently the incident involving the Pepsi truck and the Kincaid tour bus that both were stuck at this very crossing within months of this accident;

   j. Operating the train in a reckless manner;

    k.    Allowing the crossing to become an extra-hazardous crossing due to surrounding conditions (steep grade, loose gravel, etc.);

    l.    Failing to properly maintain the crossing with regard to the grade;

    m.    Failure to inspect the crossing, track, and warning appurtenances, and maintain records of said inspection; and

    n.    And other acts of negligence and gross negligence that will be specified as discovery progresses.

63.    In summary, CSX had a duty to operate the train at a speed for the then existing conditions and be prepared to slow or stop for any hazardous conditions. Here, the CSX train crew failed to stop the train when they saw the tour bus stuck on the Main Street Crossing despite having ample time and distance before impact to do so. Plaintiffs are not making a claim for excessive speed based on a specific hazard. These claims are only for failure to slow the train and apply the brakes and/or stop.

64.    Further, CSX was required by regulations to inspect, maintain, and repair the Main Street Crossing. CSX was negligent in failing to inspect, maintain, and repair the Main Street Crossing given the steep grade on the north side of the crossing, which caused the accident here.

65.    Additionally, CSX's negligent maintenance created the severe incline or "hump" at the Main Street Crossing that is so hazardous. The humped condition rendered the Main Street Crossing unsafe for motorists and ultra-hazardous and unusually dangerous.

66.    Plaintiffs would also show that this crossing was ultra-hazardous and dangerous due to the steep grade and the potential for "high centering" a vehicle in the area. This crossing was the responsibility of CSX, who failed to properly maintain the crossing.

67.    Importantly, Plaintiffs are not making any claim based on the design or construction of the railroad track or CSX's non-safety operations. Rather, Plaintiffs' allegations about the Main

Street Crossing are purely safety-related claims regarding the safety of the Main Street Crossing and are not claims targeting CSX's non-safety operations.

68. Plaintiffs would further show the Court that the accident was caused proximately and/or solely as a result of the negligence, negligence per se and gross negligence of CSX, without any negligence attributable to the Plaintiffs.

69. All of the above acts and/or omissions, singly or in combination with the others, constituted negligence and gross negligence that were the proximate causes of the injuries and deaths suffered by Plaintiffs as described herein. In addition, these acts involve an extreme degree of risk, considering the probability and magnitude of potential harm to others, and a conscious indifference to the rights, safety and welfare of others. Therefore, Plaintiffs are entitled to multiple, special, exemplary and/or punitive damages against CSX in an amount to be determined by a jury. CSX owes a high degree of care to these Plaintiffs. In addition, it is believed the engineer/conductor and CSX knew of the ultra-hazardous crossing, and failed to stop after seeing a bus on the tracks when they knew previous incidents had occurred at this crossing where low clearance vehicles had been known to become stuck or high-centered on the tracks, yet they continued to only slow down from 24 mph to 19 mph knowing they could injure and/or kill the passengers on the bus.

70. As a result of the negligence, negligence per se and gross negligence of CSX, Plaintiffs were seriously injured or killed when the train crashed into their tour bus.

### Damages Related to Personal Injury Claims

71. Plaintiffs incorporate by reference those paragraphs set out above as though fully set forth herein.

72. Plaintiffs would further show that as a direct and proximate result of the incident, all Personal Injury Plaintiffs have incurred medical expenses, that they will continue to incur medical expenses in the future, that all charges for services which have been performed to date and which will be performed in the future are reasonable according to the standards of the county in which such medical procedures were rendered and were rendered necessary as a direct result of the negligent and grossly negligent acts of CSX.

73. Plaintiffs would further show that as a direct and proximate result of the incident, all Personal Injury Plaintiffs have suffered extreme physical pain, suffering, mental anguish, including post-traumatic stress disorder ("PTSD"), disfigurement, and physical impairment; and in all probability, will be forced to endure physical pain, suffering, mental anguish; PTSD: disfigurement, and physical impairment for an undetermined length of time in the future, and probably for the rest of their life.

74. By reason of the facts hereinabove alleged, Personal Injury Plaintiffs have been made to suffer and seek to recover damages in excess of the minimum jurisdictional requirements of this Court and in such amount as the evidence may show proper at the time of trial.

### Damages for Loss of Consortium

75. Plaintiffs incorporate by reference those paragraphs set out above as though fully set forth herein.

76. Plaintiffs would further show that as a direct and proximate result of the incident, the Consortium Plaintiffs have suffered a loss of companionship and society in the past as a result of the injuries to their spouses or parent, and will continue to suffer a loss of companionship and

society which, in reasonable probability, they will sustain in the future as a result of the catastrophic injuries to their parent/spouse, if not for the rest of their lives.

77. These elements of damages were brought about to occur and were proximately caused by the negligence and gross negligence of CSX.

### Damages for Wrongful Death Claims

78. Janice Gaskamp is the surviving spouse of Eugene Gaskamp. Tim Orr is the surviving spouse of Deborah Orr and Christine Sheets, Charles Sheets and Leslie Schell are the surviving children of Deborah Orr. The Wrongful Death Plaintiffs are entitled to recover, and hereby sue pursuant to the Wrongful Death Statute (MS Code §11-7-13 et seq., Title II – Civil Practice & Procedures, Chapter 7 (2013)) for the following damages:

   a. Mental anguish sustained in the past as a result of the death of their parent/spouse.

   b. Mental anguish, which in reasonable probability, they will sustain in the future as a result of the death of their parent/spouse.

   c. Loss of companionship and society in the past as a result of the death of their parent/spouse.

   d. Loss of companionship and society which, in reasonable probability, they will sustain in the future as a result of the death of their parent/spouse;

   e. Pecuniary loss sustained in the past as a result of the death of their parent/spouse;

   f. Pecuniary loss which, in reasonable probability, they will sustain in the future as a result of the death of their parent/spouse;

   g. Loss of inheritance as a result of the death of their parent/spouse.

79. All of the above listed elements of damages were brought about to occur and were proximately caused by the above-referenced conduct of the Defendants herein.

80. The Wrongful Death Plaintiffs would further show that as a direct and proximate result of the incident, the Wrongful Death Plaintiffs have suffered extreme physical pain, suffering, mental anguish, and in all probability, will be forced to endure physical pain, suffering, and mental anguish for an undetermined length of time in the future, and probably for the rest of their lives.

## Survival Claims

81. The Survival Plaintiffs would show that pursuant to the Survival Statute (MS Code §91-7-233 et seq., Title II – Civil Practice & Procedures, Chapter 7 (2013)), the Survival Plaintiff Estates are entitled to recover, and hereby sue for the following elements of damages:

   a. Physical pain and mental anguish sustained by Decedents as a result of the incident in question and prior to their death.

   b. Medical Expenses for the reasonable and necessary services provided for Decedents as a result of the incident in question prior to their death; and

   c. Disfigurement and disability of Decedents prior to their deaths; and

   d. Reasonable and necessary funeral and burial expenses for the funeral and burial of Decedents.

82. The above listed elements of damages were brought about to occur and were proximately caused by the negligence of the Defendants herein.

83. The Survival Plaintiffs would show that as a direct and proximate result of the incident, Decedents incurred medical expenses, that all the charges for services which have been performed to date and which will be performed in the future are reasonable according to the standards of the county in which such medical procedures were rendered and were rendered necessary as a direct result of the negligent acts of Defendants.

84. The Survival Plaintiffs would further show that as a direct and proximate result of the incident, Decedents suffered extreme physical pain, suffering, mental anguish, and physical impairment

85. By reason of the facts hereinabove alleged, the Survival Plaintiffs have been made to suffer and seek to recover damages in excess of the minimum jurisdictional requirements of this Court and in such amount as the evidence may show proper at the time of trial.

86. All of the above listed elements of damages were brought about to occur and were proximately caused by negligence and gross negligence of the Defendants herein.

## Damages for Bystander Claims

87. Plaintiffs incorporate by reference those paragraphs set out above as though fully set forth herein.

88. Plaintiffs would further show that as a direct and proximate result of the incident, the Bystander Plaintiffs have suffered severe mental anguish as a result of witnessing the catastrophic injuries, near death and deaths of their spouse/parent, and in all probability, will be forced to endure severe mental anguish for an undetermined length of time in the future, and probably for the rest of their lives.

89. By reason of the facts hereinabove alleged, the Bystander Plaintiffs have been made to suffer and seek to recover damages in excess of the minimum jurisdictional requirements of this Court and in such amount as the evidence may show proper at the time of trial.

90. All of the above listed elements of damages were brought about to occur and were proximately caused by negligence and gross negligence of the Defendants herein.

### Exemplary/Punitive Damages

91. The conduct of CSX amounts to gross negligence.

92. Plaintiffs would show that the actions on the part of CSX constitutes malice, willful and wanton acts or omissions, and gross negligence. Plaintiffs re-assert the allegations of negligence and gross negligence set forth above. Plaintiffs would also show that CSX knew of the ultra-hazardous crossing and that there had been sixteen (16) previous incidents at the crossing involved herein due to high-centering of vehicles on the crossing, or near misses, including an incident two months earlier with a Pepsi truck and one year earlier with a Kincaid tour bus. Yet knowing the crossing in question as being an ultra-hazardous crossing, the engineer/conductor did not stop when they probably could have and avoided this collision and CSX never properly maintained this crossing to prevent other accidents similar to the one made the basis of this suit. Plaintiffs seek and pray for an amount of exemplary damages in excess of the minimum jurisdictional limits of the Court.

### Prejudgment Interest

93. Plaintiffs are entitled to prejudgment interest on the damages they have sustained.

### Jury Demand

94. Plaintiffs hereby respectfully demand a trial by jury.

### Prayer

95. For these reasons, Plaintiffs ask that CSX be cited to appear and answer and that Plaintiffs have judgment against CSX for the following:

    a. Actual/Compensatory damages within the jurisdictional limits of this court;

    b. Exemplary/Punitive damages as allowed by law;

c. Pre-judgment (from the date of injury through the date of judgment) as allowed by law;

d. Post-judgment interest as allowed by law;

d. Costs of suit; and

e. All other relief, in law and in equity, to which Plaintiffs may be entitled.

Respectfully submitted,

*Gerald Waltman III*
Gerald Waltman III (MS Bar No. 105409)
Mark W. Davis (MS Bar No. 5840)
**DAVIS & CRUMP, P.C.**
2601 14th Street
Gulfport, MS 39501
Telephone: (228) 863-6000
Facsimile: (228) 864-0907
Email:   jess.waltman@daviscrump.com
          markdavis@daviscrump.com

**ATTORNEYS FOR PLAINTIFFS**